UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Kelly Eve Brown,

Plaintiff,

v.

Civ. No. 01-2292 (JNE/JGL)
ORDER

City of Bloomington, a Minnesota municipality; Daniel Rueben Duerksen, personally and in his capacity as a Bloomington Police officer; Mike Taylor, personally and in his capacity as a Bloomington Police officer; Jane Doe and Richard Roe, unknown and unnamed Bloomington Police officers, personally and in their capacities as Bloomington Police officers; and Roger Willow, Bloomington Chief of Police, personally and in his official capacity,

Defendants.

---

Albert T. Goins, Sr., Esq., and Kathryn Burke, Esq., Goins & Wood, P.C., appeared for Plaintiff Kelly Eve Brown.

Paul Reuvers, Esq., Iverson Reuvers, LLC, appeared for Defendants City of Bloomington, Daniel Rueben Duerksen, Mike Taylor, Jane Doe, Richard Roe, and Roger Willow.

---

This is an action by Kelly Eve Brown against several Bloomington Police officers, the Bloomington Chief of Police, and the City of Bloomington (City). Brown brought the action in state court asserting claims under 42 U.S.C. § 1983 (2000), and claims under state law for assault, battery, intentional infliction of emotional distress, negligent infliction of emotional distress, negligence, negligent hiring, negligent supervision, negligent retention, false arrest, malicious prosecution, and violations of the Minnesota Human Rights Act (MHRA), Minn. Stat. ch. 363 (2002). The City, the Chief of Police, and the officers (collectively, Defendants)

FILED AUG 2 6 2003
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTERED AUG 2 6 2003
DEPUTY CLERK'S INITIALS

removed the case to this Court and now move for summary judgment. For the reasons set forth below, the Court grants the motion in part.

## I. BACKGROUND

On December 1, 2000, at 2:02 a.m., Bloomington Police Dispatch received a 911 call from a woman, later identified as Brown, who was threatening to cut the throat of a man, later identified as James Luban. Bloomington Police Officers Mike Taylor and Todd Bohrer were the first to arrive at the residence where the call had originated. As they approached the residence, Bloomington Police Officer Jerry Wukawitz arrived. Bohrer walked up the steps of a deck and approached the door. Taylor remained near the top of the steps. Brown yelled and threatened Luban and Bohrer. For a few minutes, Bohrer tried to calm Brown and asked her to step out of the residence. Brown refused to exit the residence.

Because Brown was not calming down, Bohrer asked Taylor to obtain less-lethal munition. Taylor relayed the request to Wukawitz, who broadcast the request via police radio. Bloomington Police Officer Daniel Duerksen responded that he would bring less-lethal munition to the scene. At 2:06 a.m., Duerksen arrived with less-lethal munition. He unloaded his shotgun and walked to the steps where Bohrer and Taylor were standing. After Taylor confirmed that Duerksen had a less-lethal round, Duerksen loaded it into the shotgun. Duerksen then loaded two slug rounds into the shotgun, thinking they were less-lethal rounds.

The officers backed away from the door. When the officers were approximately ten feet from the bottom step, Brown exited the residence holding a knife to her throat with her right hand. Brown did not comply with commands to drop the knife, and Duerksen fired twice. The first shot, a less-lethal round, struck her in the right leg. The second shot, a slug round, struck her as she was falling and dropping the knife.

## II. DISCUSSION

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, Rule 56(e) requires the nonmoving party to respond by submitting evidentiary materials that designate "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### A. Unidentified officers

Defendants assert that the unidentified officers, Jane Doe and Richard Roe, should be dismissed pursuant to Fed. R. Civ. P. 4(m), which provides in relevant part:

> If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

In this case, the discovery deadline has passed, and Brown has neither named nor served the unidentified officers. Accordingly, the Court dismisses the action without prejudice as to the unidentified officers.

**B. Section 1983 claims**

Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

Brown asserts that Duerksen violated her rights under the Fourth and Fourteenth Amendments by subjecting her to unreasonable force and by engaging in conduct that shocks the conscience. As to Taylor, Brown alleges that he failed to intervene to prevent Duerksen's alleged violations of her constitutional rights. Finally, Brown claims that the City and Willow failed to properly train, supervise, and discipline the officers responsible for the alleged violations of her constitutional rights.

*1. Duerksen*

Duerksen asserts that he is entitled to qualified immunity. The doctrine of qualified immunity protects state actors from civil liability when "'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Sexton v. Martin*, 210 F.3d 905, 909 (8th Cir. 2000) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When faced with an assertion of qualified immunity in a suit against an officer for an alleged constitutional violation, a court must first consider whether the facts, taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001). Only if a constitutional violation could be established should the court then consider whether the right was clearly established. *Id.* "The relevant, dispositive inquiry in determining whether a right is clearly

established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202.

Defendants argue that Brown's claims against Duerksen should be analyzed under the Fourth Amendment, not the Fourteenth Amendment. The United States Supreme Court has held that "*all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Graham v. Connor*, 490 U.S. 386, 395 (1989). The Court therefore declines to analyze Brown's claims under the Fourteenth Amendment.

"[T]he 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397; *see Winters v. Adams*, 254 F.3d 758, 765 (8th Cir. 2001). Whether an officer's use of force is reasonable "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. Circumstances such as the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is resisting arrest or attempting to evade arrest by flight are relevant to the reasonableness of the officer's conduct. *Id.* "[A]bsent probable cause of an immediate threat of death or serious bodily injury, use of deadly force is not objectively reasonable." *Billingsley v. City of Omaha*, 277 F.3d 990, 993 (8th Cir. 2002) (citing *Tennessee v. Garner*, 471 U.S. 1, 9 (1985)).

Brown asserts that Duerksen's use of force was not objectively reasonable. She relies heavily on *Ludwig v. Anderson*, 54 F.3d 465 (8th Cir. 1995), devoting three pages of her

memorandum in opposition to Defendants' motion to a block quote of the Eighth Circuit's factual recitation to illustrate the "eerie similarity" between that case and the present case. In that case, the Eighth Circuit held that police officers were not entitled to qualified immunity from a claim that they employed excessive force in seizing an individual through the use of deadly force. *Id.* at 473-74. As summarized by the Eighth Circuit, the facts of *Ludwig* are as follows:

> Viewing the evidence in the light most favorable to Merilyn Ludwig, the distance from Ludwig to the nearest bystander at the time of the shooting was approximately 150 feet, and, if Ludwig had continued running in the direction he was running when shot, he would have increased that distance. At the time of the shooting, the officers had only seen Ludwig with a knife and had not seen, nor did Ludwig possess, any other weapon. [Officer] Strong stated that Ludwig was in a defensive posture and never moved towards any officer. At the time he shot, Strong admittedly did not fear for his own safety due to the distance between himself and Ludwig and because Ludwig was running away.

*Id.* at 473. *Ludwig* is readily distinguishable from the present case. When Brown was shot, she was not running away from Duerksen and the other officers. Rather, she had just emerged from the residence and was facing them. Brown herself conceded at her deposition that the first shot fired by Duerksen was "fair" given the threat she posed to herself. In short, the Court finds Brown's reliance on *Ludwig* misplaced.

Turning to the facts of this case, the record, viewed in the light most favorable to Brown, reveals that Duerksen learned upon his arrival at the scene that Brown had threatened Luban and officers with a knife. After failing to convince Brown to step out of the residence, Bohrer, Taylor, and Duerksen backed away from the residence. As they were backing away from the door, Brown emerged from the residence holding a knife to her throat. She denies stepping toward the officers or threatening the officers with the knife after emerging from the residence. After failing to comply with orders to drop the knife, Duerksen, who was standing approximately

10 feet from her, fired two rounds at her in rapid succession. The first round struck her in the right thigh. The second round struck her as she was falling and dropping the knife.

Duerksen's first shot, a beanbag round, was objectively reasonable. The Seventh Circuit recently held that the use of four beanbag rounds by police to end a standoff with an individual who had armed himself with knives, drove his wife out of their house, refused to exit the house or to allow police to enter, held a knife to his throat while threatening suicide, and moved toward a propane tank after threatening to blow it up was objectively reasonable. *Bell v. Irwin*, 321 F.3d 637, 639-40 (7th Cir. 2003), *petition for cert. filed*, 71 U.S.L.W. 3759 (May 23, 2003). In this case, after threatening Luban and officers with a knife, Brown emerged from the residence holding the knife to her throat. Officers had just backed away from the door and Duerksen stood approximately 10 feet from her. After Brown failed to comply with commands to drop the knife, Duerksen fired the less-lethal round at her. Under these circumstances, Duerksen's first shot was objectively reasonable.

As to the second round, Duerksen fired it almost immediately after the first round, thinking it was also a less-lethal round. Had it been a beanbag round, *Bell* would end the Court's analysis. That the second round turned out to be a slug round does not alter the Court's conclusion that Duerksen is entitled to qualified immunity. According to Brown, Duerksen "negligently employed deadly force." Negligent conduct fails to establish a claim under section 1983. *Young v. City of Little Rock*, 249 F.3d 730, 734 (8th Cir. 2000); *Estes v. Moore*, 993 F.2d 161, 163-64 (8th Cir. 1993) (holding district court correctly excluded evidence of negligent in action brought under section 1983); *Schultz v. Amick*, 955 F. Supp. 1087, 1096 (N.D. Iowa 1997) (collecting cases). For these reasons, the record does not support Brown's contention that

Duerksen violated her Fourth Amendment rights, and Duerksen is entitled to qualified immunity. The Court grants Defendants' motion as to Duerksen on Brown's section 1983 claim.

2. *Taylor*

Brown alleges that Taylor failed to prevent Duerksen from violating her constitutional rights. A claim under section 1983 against an officer for failure to intervene necessarily assumes another officer violated the plaintiff's constitutional rights. *Putman v. Gerloff*, 639 F.2d 415, 432-24 (8th Cir. 1981). Because Duerksen did not violate Brown's constitutional rights, this necessary predicate to Brown's claim against Taylor is absent. Taylor is therefore entitled to summary judgment on Browns' section 1983 claim. *See id.*

3. *The City and the Chief of Police*

Brown alleges that the City and the Chief of Police, Roger Willow, failed to properly train, supervise, and discipline the officers responsible for the alleged violations of her constitutional rights. A municipality "cannot be liable . . . whether on a failure to train theory or a municipal custom or policy theory, unless [an officer] is found liable on the underlying substantive claim." *Abbott v. City of Crocker*, 30 F.3d 994, 998 (8th Cir. 1994); *see Sinclair v. City of Des Moines*, 268 F.3d 594, 596 (8th Cir. 2001) (per curiam) (collecting cases). The same is true for a chief of police. *Neal v. St. Louis County Bd. of Police Comm'rs*, 217 F.3d 955, 959 (8th Cir. 2000). In this case, Duerksen and Taylor are entitled to summary judgment on Brown's section 1983 claims against them. Consequently, the City and Willow are entitled to summary judgment on Brown's section 1983 claims.

### C. State-law claims

In response to Defendants' motion, Brown abandoned her claims for false arrest, malicious prosecution, negligent hiring, and negligent retention. The Court therefore grants Defendants' motion as to these claims.

The sole basis for the Court's jurisdiction over Brown's remaining state-law claims is 28 U.S.C. § 1367(a) (2000), which permits a district court to exercise supplemental jurisdiction over claims that are part of the same case or controversy as the claims that fall within the district court's original jurisdiction. A district court may, in its discretion, decline to exercise supplemental jurisdiction when "all claims over which it has original jurisdiction" have been dismissed. 28 U.S.C. § 1367(c)(3); *see Franklin v. Zain*, 152 F.3d 783, 786 (8th Cir. 1998) (holding district court did not abuse its discretion in declining to exercise supplemental jurisdiction over state-law claim pursuant to section 1367(c)(3)); *Save Our Health Org. v. Recomp of Minn., Inc.* 829 F. Supp. 288, 293 (D. Minn. 1993), *aff'd*, 37 F.3d 1334 (8th Cir. 1994) (declining to exercise supplemental jurisdiction over state law claims pursuant to section 1367(c)(3)). In this case, Defendants are entitled to summary judgment on all claims that fall within the Court's original jurisdiction. The Court declines to exercise its supplemental jurisdiction over Brown's remaining state-law claims. The Court therefore remands to state court Brown's claims for assault, battery, intentional infliction of emotional distress, negligent infliction of emotional distress, negligence, negligent supervision, and violations of the MHRA. *See Lindsey v. Dillards, Inc.*, 306 F.3d 596, 599 (8th Cir. 2002).

## III. CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendants' Motion for Summary Judgment [Docket No. 26] is GRANTED IN PART.

2. The action is DISMISSED WITHOUT PREJUDICE as to Defendants Jane Doe and Richard Roe.

3. Count V, Count VI, Count VII, Count XI, Count XIII, Count XV, and Count XVI of Brown's Complaint are DISMISSED WITH PREJUDICE as to Defendants Duerksen, Taylor, Willow, and City of Bloomington.

4. Count I, Count II, Count III, Count IV, Count VIII, Count IX, Count X, Count XII, and Count XIV of Brown's Complaint are REMANDED to the Minnesota District Court for the Fourth Judicial District.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: August 26, 2003

s/ J.N. Ericksen
JOAN N. ERICKSEN
United States District Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES:

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

C:\FORMS\APPEAL NO. CIV
Rev. August 11, 1995